E-FILED
Friday, 26 July, 2019  07:26:32 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| Tricia Danyus and Justin Danyus,　　　　　) | Case No. 19-cv-1258 |
| 　　　　　) | |
| 　　Plaintiffs,　　　　　) | Complaint for Civil Rights Violations and |
| 　　　　　) | for Related State Law Violations |
| 　　　　v.　　　　　) | |
| 　　　　　) | |
| Kendra Slama DeRosa, Rick Bleichner,　　) | |
| Theresa Ciardini, Tracy Wolf, and the Town　) | |
| of Normal, Illinois,　　　　　) | |
| 　　　　　) | **Jury Demanded** |
| 　　Defendants.　　　　　) | |

## COMPLAINT

Now come Plaintiffs Tricia Danyus and Justin Danyus, by and through counsel, and, against

Defendants Kendra Slama DeRosa, Theresa Ciardini, Tracy Wolf, Rick Bleichner, and the Town of

Normal, Illinois, complain as follows:

### Jurisdiction and Venue

1.　　　This action is brought to redress constitutional violations and related state law

violations committed by Defendant Kendra Slama DeRosa, a Town of Normal, Illinois Police

Department officer/detective, Defendant Rick Bleichner, the chief of police of the Town of

Normal, Illinois Police Department, and two Illinois Department of Children and Family Services

("DCFS") employees, Defendants Theresa Ciardini and Tracy Wolf.

2.　　　This action arises under the United States Constitution and is brought pursuant to 42

U.S.C. § 1983.

3.　　　Accordingly, this Court has jurisdiction to hear this case pursuant to 28 U.S.C. §

1331 and 1343.

4.      This court has supplemental jurisdiction to hear Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because these claims are so related to Plaintiffs' constitutional claims that they form part of the same case or controversy under Article III of the United States Constitution.

5.      Venue is proper in this District under 28 U.S.C. §1391(b) because the events giving rise to the claims asserted herein occurred in this District, and, on information and belief, the Defendants reside here.

6.      This action is properly filed in the Peoria Division of the Central District of Illinois pursuant to Local Rule 40.1(A) because the events giving rise to the claims asserted herein occurred in McLean County, Illinois.

## Parties

7.      Plaintiffs Tricia Danyus and Justin Danyus are a married couple. They are citizens of the United States and currently reside in this District.

8.      Defendant Kendra Slama DeRosa ("DeRosa") is and was, at all times herein mentioned, employed by the Town of Normal, Illinois Police Department as a police officer/detective. At all times herein mentioned, she was acting under color of state law and within the scope of her employment for the Town of Normal, Illinois Police Department. She is being sued in her individual capacity.

9.      Defendant Rick Bleichner ("Bleichner") is and was, at all times herein mentioned, employed by the Town of Normal, Illinois Police Department as the chief of police. At all times herein mentioned, he was acting under color of state law and within the scope of his employment for the Town of Normal, Illinois Police Department. He is being sued in his individual capacity.

10.     Defendant Theresa Ciardini ("Ciardini") is and was, at all times herein mentioned, employed by DCFS as a Child Protection Specialist. At all times herein mentioned, unless explicitly

indicated otherwise, she was acting under color of state law and within the scope of her employment for DCFS. She is being sued in her individual capacity.

11.     Defendant Tracy Wolf ("Wolf") is and was, at all times herein mentioned, employed by DCFS as a Public Service Administrator. At all times herein mentioned, she was acting under color of state law and within the scope of her employment for DCFS. She is being sued in her individual capacity.

12.     Defendant Town of Normal, Illinois is and was, at all times herein mentioned, a political subdivision of the State of Illinois, existing as such under the laws of the State of Illinois. The Town of Normal, Illinois is and was, at all times herein mentioned, responsible for maintaining, managing, and/or operating the Town of Normal, Illinois Police Department, and thus, is and was, at all relevant times, the employer and principal of DeRosa and Bleichner.

## Facts

13.     Prior to the events alleged herein, Tricia Danyus and Justin Danyus had lovingly fostered thirteen children without being accused of any abuse or neglect.

14.     Tricia Danyus and Justin Danyus are currently the loving foster parents of J.H., who is now sixteen years old. They intend to adopt her as soon as they are able.

15.     They are also currently the loving adoptive parents of I.D., who is now four years old, and of J.D., who is now three years old.

16.     I.D. and J.D. are biological siblings. Biologically, J.H. is the half-sister of I.D. and of J.D.

17.     On or around August 18, 2017, Tricia Danyus and Justin Danyus began taking I.D. and J.D. to A Shining Star Learning Center, in Normal, Illinois for daycare services. They moved them to A Shining Star Learning Center because they were having difficulty affording the daycare center that I.D. and J.D. had previously attended.

3

18.     When Justin Danyus dropped I.D. and J.D. off for their first day at A Shining Star Learning Center, he noticed that the teachers were cold and unwelcoming, and that I.D. was going to be spending time in an extremely loud gym with children much older than he was.

19.     On August 18, 2017, after making these observations at A Shining Star Learning Center, Justin Danyus contacted his and Tricia Danyus' DCFS adoption worker. Justin Danyus explained to her that he had concerns about A Shining Star Learning Center and asked about switching I.D. and J.D. to another daycare.

20.     On or around August 21, 2017, Justin Danyus was able to secure places for I.D. and J.D. at their previous daycare center, despite the additional cost. However, I.D. and J.D. were not scheduled to start there until September 5, 2017, so, in the meantime, they remained at A Shining Star Learning Center.

21.     On or around August 22, 2017, when Justin Danyus was dropping I.D. and J.D. off at A Shining Star Learning Center, I.D. became extremely agitated and scared. I.D. had never behaved this way before when being dropped off at daycare.

22.     Later that day, August 22, 2017, when Tricia Danyus picked up I.D. and J.D. from A Shining Star Learning Center, she was given an accident report related to a visible bump on J.D.'s head. Nobody from a Shining Star Learning Center would explain to Tricia Danyus what had happened to cause the bump.

23.     After returning home that day, August 22, 2017 Tricia Danyus then noticed a hand-shaped mark on J.D.'s buttock while changing his diaper. She immediately began to fear that an employee of A Shining Star Learning Center had caused the mark.

24.     So, Tricia Danyus photographed these injuries. She then also began to fear that two fingerprint-shaped black bruises she had seen on I.D.'s arm the day before, which she had

previously written off as accidental, had also been caused by daycare employees, so she photographed those bruises as well.

26.     She then shared the pictures with Justin Danyus, and together, Tricia Danyus and Justin Danyus decided to remove I.D. and J.D. from A Shining Star Learning Center immediately. They had a relative watch I.D. and J.D. for three days, and arranged for I.D. and J.D. to start at their previous daycare on August 28, 2017, instead of on September 5, 2017, despite the additional cost.

26.     On August 23, 2017, Justin Danyus emailed their DCFS adoption worker to report the strange marks and to request a switch of daycares for I.D. and J.D. beginning immediately.

27.     On the night of August 27, 2017, Tricia Danyus posted the pictures of the marks on I.D. and J.D. to Facebook and indicated, in the same post, that she believed that employees of A Shining Star Learning Center had caused them. Although this post was only visible to friends and family initially, Tricia Danyus made it public after a friend requested that she do so. The post was subsequently shared and/or commented on by hundreds of people.

28.     On or around August 28, 2017, someone called the police to anonymously report the allegations in Tricia Danyus' post.

29.     Shortly thereafter, on August 28, 2017, DeRosa contacted Tricia Danyus by telephone and asked her to come into the station to give a recorded statement.

30.     During the telephone call on August 28, 2017, DeRosa gathered preliminary information from Tricia Danyus.

31.     Shortly thereafter, on August 28, 2017, DeRosa contacted A Shining Star Learning Center and asked for the names of the teachers who would have had access to I.D. and J.D. while they were at the daycare. The director of the daycare gave her the names, and DeRosa told her that she would be coming by to interview them.

32.     DeRosa went to the daycare on August 28, 2017, where she interviewed the teachers. She did not call them into the station to be interrogated. Each interview lasted fifteen to twenty minutes, with the exception of a joint interview of the owner of the daycare and the director of the daycare, which lasted thirty minutes.

33.     The employees of the daycare denied any wrongdoing and lied about how they had handled children.

34.     DeRosa accepted the employees' explanations.

35.     DeRosa also watched a video of I.D. bumping his head. She did not ask to watch videos of J.D.'s diaper changes or of I.D. in the classroom to see if the other marks Tricia Danyus had posted to Facebook had been caused by the daycare teachers.

36.     Later that day, August 28, 2017, Tricia Danyus readily and willingly cooperated with DeRosa, and reported to the Town of Normal, Illinois Police Department station, believing that the police would be investigating A Shining Star Learning Center.

37.     DeRosa then interrogated Tricia Danyus in police department interrogation room, while looking through Tricia Danyus' cell phone pictures, for about five minutes, without giving her *Miranda* warnings.

38.     DeRosa then read Tricia Danyus *Miranda* warnings, and began interrogating her further.

39.     During the interrogation, Tricia Danyus informed DeRosa that I.D. and J.D.'s physical therapist told her that she had previously heard of similar things happening at A Shining Star Learning Center. Tricia Danyus also informed DeRosa that another mother had contacted her to say that she was worried about marks on her child that she had previously written off as accidental. DeRosa ignored Tricia Danyus, and did not even take down the names of the physical therapist or the other mother, in order to investigate further.

40.     Despite evidence pointing to A Shining Star Learning Center being at fault, DeRosa focused the entire interrogation on attempting to come up with another person to pin it on, ideally Tricia Danyus.

41.     During the interrogation, DeRosa told Tricia Danyus that she had watched video from A Shining Star Learning Center and had seen J.D. bump his head while playing with a ball.

42.     DeRosa also told her that she had obtained all video from the day of the incident, August 22, 2017.

43.     DeRosa further said she had talked to daycare workers who had told her that the arm bruises were not out of the ordinary, and that they did not cause them. She then tried to get Tricia Danyus to say that she was not suspicious of the arm bruises and admit that they had not been caused by daycare employees. Obviously, there was no way that Tricia Danyus could have admitted that the arm bruising had occurred some other way because she did not know how it had been caused.

44.     DeRosa did this because she knew or suspected that the video would reveal that employees of A Shining Star Learning Center had caused the marks. DeRosa was aiming to get Tricia Danyus to stop pressing this arm bruising issue so that she could falsely justify ending her "investigation" into it.

45.     However, Tricia Danyus remained reluctant to state that she was not suspicious of the arm bruising.

46.     Yet, DeRosa then narrowed in solely on the handprint on J.D.'s buttock. She did this because she knew she could pin it on Tricia Danyus.

47.     DeRosa then began working towards pinning the handprint on Tricia Danyus by telling Tricia Danyus that, if she went and watched all the video and it did not show the handprint being caused by a daycare employee, then the handprint must have come from someone at home.

7

48.     DeRosa then said, "that's something that we'll *probably* have to meet up and talk about again." She then asked Tricia Danyus if J.H. or her husband could have done it, indicating that she had no intention of doing anything but pinning it on someone other than the daycare workers.

49.     Indeed, there was no point in questioning Tricia Danyus about whether it had happened at home without having watched the video, unless DeRosa hoped that Tricia Danyus would give her something that she could use to implicate Tricia Danyus or someone else in her family. This is indeed what she was hoping for.

50.     DeRosa then said again that she would watch all the video and that if she did not see anything, she would have to call Tricia Danyus and her family back in.

51.     DeRosa knew at that time that she would be calling Tricia Danyus back in to pin whatever caused the mark on J.D.'s buttock on her.

52.     Tricia Danyus was in the interrogation room that day, August 28, 2017, for about one hour.

53.     DeRosa then contacted the DCFS hotline and was told the report would be assigned to an investigator.

54.     DeRosa later spoke with the assigned investigator, Ciardini, on or around August 29, 2017. On information and belief, DeRosa reported to Ciardini that she suspected that Tricia Danyus (or J.H.) was responsible for the marks.

55.     DeRosa waited three days, until August 31, 2017, to review the video from the day that the mark on J.D.'s buttock had been caused, August 22, 2017.

56.     This video shows daycare workers blatantly abusing and neglecting children.

57.     It shows a teacher grabbing I.D. forcefully by the arm where the bruises were discovered and then pulling him around the room.

58.     It shows a teacher grabbing I.D. by the shirt, yelling at him, smacking his hand away from his mouth, and yelling at him some more.

59.     It shows teachers shoving children to the floor.

60.     It shows a teacher blatantly ignoring a crying child after an adult-sized rocking chair had fallen on him.

61.     It shows a teacher changing multiple diapers without changing gloves or washing her hands in between.

62.     It shows a teacher gripping J.D.'s buttock with a dirty latex glove, where the mark was later discovered, for an extended period of time beginning around 3:22 p.m. on August 22, 2017, just hours before Tricia Danyus discovered the mark.

63.     Yet, instead of charging the daycare and/or its employees and/or reporting this to DCFS, DeRosa contacted Ciardini after viewing the video and, on information and belief, conspired with her to pin whatever action caused the mark on J.D.'s buttock on Tricia Danyus.

64.     Together, DeRosa and Ciardini planned to call Tricia Danyus back into the police station for a second round of interrogation.

65.     Before the interrogation, they developed an interrogation plan that would ideally get Tricia Danyus to falsely admit to having caused the mark on J.D.'s buttock.

66.     They did this to protect A Shining Star Learning Center from public backlash and loss of business.

67.     On September 1, 2017, Ciardini and DeRosa carried out their plan.

68.     On that day, September 1, 2017, DeRosa called Tricia Danyus into the police station for a second round of interrogation.

69.     Ciardini was present at the station and watched DeRosa interrogate Tricia Danyus live, from another room.

9

70.     During this interrogation, DeRosa told Tricia Danyus that she had obtained all of the video from August 22, 2017 and had spent all of August 31, 2017 watching twenty-one hours of footage.

71.     She then lied and told Tricia Danyus that she had seen the employees of A Shining Star Learning Center doing a "pretty fantastic job"

72.     Tricia Danyus maintained that neither she nor J.H. had caused the mark. She firmly stated that she does not spank her children.

73.     However, DeRosa kept insisting that if Tricia Danyus admitted that she had caused the mark, they "could deal with it" and that, if she had, it would normally just be considered "parental discipline."

74.     She falsely said that everything pointed to Tricia Danyus having done it and that the marks "did not" come from the daycare.

75.     DeRosa then left Tricia Danyus alone in the interrogation room for over an hour while she interrogated J.H. and, on information and belief, strategized further with Ciardini about how to get Danyus to admit to having caused the mark on J.D.

76.     During J.H.'s interrogation, J.H. told DeRosa that she did not hear a smack or a cry around the time that Tricia Danyus discovered the mark on J.D.'s buttock. J.H. further told DeRosa that Tricia Danyus had been alone with J.D. for a matter of seconds before Tricia Danyus called for J.H. to bring her a phone to photograph the mark.

77.     DeRosa then returned and told Tricia that J.H. told her that J.D. is difficult to change, so Tricia Danyus must have used force on J.D. to try to get him to sit still, causing the mark.

78.     Tricia Danyus began crying and said that she did not even think of that possibility, and that she would never hurt J.D.

10

79.     DeRosa then insisted that Tricia Danyus knew that she had caused the mark immediately.

80.     DeRosa then insistently pushed Tricia Danyus to admit to having caused the mark, and said that, if she had, it would be explainable.

81.     Tricia Danyus still maintained that she believed that the mark had been caused by a daycare employee.

82.     DeRosa then lied, saying, "it 100% did not occur at the daycare, I'm here to tell you that; I watched painstakingly… [it] did not happen at the daycare."

83.     DeRosa then said that the only person who could have left the mark on J.D. was Tricia Danyus and asked whether she was sorry for "blasting" the daycare, given that it had lost multiple customers as a result.

84.     She continued to insist that the only person who could have left the mark was Tricia Danyus. She then left Tricia Danyus in the room alone.

85.     On information and belief, DeRosa then had another conversation with Ciardini about how to get Tricia Danyus to admit to having caused the mark.

86.     Shortly thereafter, Ciardini went into the room to interrogate Tricia Danyus further.

87.     Ciardini then interrogated Tricia Danyus while DeRosa watched live from another room.

88.     During that interrogation, Ciardini told Tricia Danyus that she was the DCFS investigator assigned to the case.

89.     Ciardini said she was in agreement with DeRosa that it was Tricia Danyus who had caused the mark and asked her why she had posted "all that stuff" on Facebook.

90.     Ciardini scolded Tricia Danyus for causing a really bad experience for the daycare.

91.     Ciardini made it very clear that she and DeRosa were upset that Tricia Danyus had "caused problems" for A Shining Star Learning Center.

92.     Then, during the interrogation, Ciardini stated that spanking a kid on the bottom **"doesn't even rise to abuse and neglect."**

93.     Ciardini then insisted multiple times that Tricia Danyus had smacked J.D. on the butt.

94.     Tricia Danyus still insisted that she did not smack J.D. and told Ciardini that another mother had told her that her child had been spanked and forced to pee in his pants at A Shining Star Learning Center. Ciardini brushed this off and continued to insist that Tricia had smacked J.D. on the butt. Tricia Danyus again stated that she had not.

95.     Ciardini then said "honey, you just need to admit that you did that [smacked J.D. on the butt] at some point, you really do, I mean **nobody is going to take your license, nobody is going to take your kids, nothing that bad is going to happen… you smacked him on the butt, that's it… you can't get charged for that."**

96.     Ciardini further stated **"the fact that you smacked him on the butt…  does not make you a child abuser."**

97.     Tricia Danyus then cried and stated she was scared she would lose the ability to adopt the other biological sibling of I.D. and J.D., as well as J.H. Ciardini told her that none of that would happen.

98.     Ciardini told Tricia Danyus that she herself had once hit her own child too hard in the face while nursing, in order to get her child to stop biting her.

99.     Ciardini then left Tricia Danyus crying in the room alone to wait for DeRosa to return.

100.     DeRosa returned about seven minutes later and interrogated Tricia Danyus again.

12

101.     DeRosa then asked if Tricia Danyus had posted on Facebook so that A Shining Star Learning Center would lose customers. Tricia Danyus told DeRosa no, and that she was hoping that an investigation would have revealed that the daycare had done something to cause I.D. to behave strangely.

102.     DeRosa then asked Tricia Danyus if she had smacked J.D. on the bottom with the intent not to hurt him but maybe just to grab his attention.

103.     Tricia Danyus falsely admitted that she had done so.

104.     Tricia Danyus did not cause the mark on J.D. An employee of the daycare did.

105.     DeRosa then lied again and said that I.D. had been "very happy" in all the videos, that he was playing, that the daycare employees were loving "on their kids" in the videos, that whenever I.D. was sad, they would pull him close and comfort him, that they made sure that the more aggressive kids were separated from him, and that they did what they were supposed to do. None of this was true.

106.     DeRosa then told Tricia Danyus that she had already spoken with the state's attorney and told Tricia Danyus that she would be arrested and charged for posting a lie on Facebook and for committing domestic battery. DeRosa further stated that DCFS would be coming out to talk to her. DeRosa said she would contact her at a later date to come turn herself in to the police.

107.     Tricia Danyus then asked what she would be arrested for.

108.     DeRosa said disorderly conduct and possibly domestic battery.

109.     Tricia Danyus asked if she would go to jail for this.

110.     DeRosa told her yes.

111.     DeRosa stated that she would give the state's attorney her report indicating what Tricia Danyus had told her, and stated that she would follow up with her about turning herself in.

112.     Tricia Danyus was in the interrogation room that day, September 1, 2017, for more than two hours.

113.     Immediately after the September 1, 2017 interrogation, DeRosa drove to A Shining Star Learning Center to personally inform them that they had been exonerated and that Tricia Danyus had admitted to having caused the mark.

114.     On or around September 5, 2017, Tricia Danyus was arrested for felony filing of a false report and felony obstruction of justice. She spent the night in jail and was released the next day on bond.

115.     On or around September 6, 2017, Police Chief Bleichner issued a press release stating that Tricia Danyus had falsely reported that employees of A Shining Star Learning Center had abused her child, and that she had been charged with obstruction of justice and filing a false report as a result. The press release further stated that Tricia Danyus had known that the allegations were patently false, that A Shining Star Learning Center had fully and immediately cooperated with detectives, and that A Shining Star Learning Center had been cleared of any wrongdoing.

116.     On information and belief, DeRosa conspired with and worked with Bleichner to draft and issue this press release.

117.     Also on or around September 6, 2017, Ciardini went to I.D. and J.D.'s new daycare and examined them. She reported that I.D. had bruises on his body. He obviously did not. He had one bruise on his buttocks that was not caused by abuse. Any other marks on his body were caused by his eczema.

118.     On that same day, September 6, 2017, Tricia Danyus recanted her "confession" and told Ciardini that DeRosa had pressured her into falsely admitting to having caused the mark on J.D.'s buttock.

119.    Later that day, September 6, 2017, Wolf and Ciardini put a "protection plan" in place, leaving Justin Danyus in a protective role of I.D. and J.D.

120.    Then, on or around the same day, September 6, 2017, *Pantagraph* published an article with a mugshot of Tricia Danyus indicating that she had confessed to having caused the mark on J.D. *Pantagraph* obtained this information from the Town of Normal, Illinois Police Department.

121.    Later that same day, September 6, 2017, Wolf and Ciardini decided to take protective custody of I.D. and J.D.

122.    Subsequently, Ciardini went to take I.D. and J.D. into protective custody. Ciardini did not even know at that time that I.D. and J.D. were adopted and was planning to place them in a foster home.

123.    When Ciardini learned that I.D. and J.D. were adopted, she placed them with a relative instead.

124.    DCFS, through Ciardini and Wolf, also removed J.H. from Tricia Danyus and Justin Danyus' custody and placed her with a relative on September 6, 2017.

125.    Ciardini then transported I.D. and J.D. to a hospital, where Ciardini attempted to have a doctor falsely report that I.D. had bruises about his body.

126.    The doctor told Ciardini that there were no bruises about I.D.'s body and that he just had eczema. The doctor further stated that the small bruise on his buttocks was not suspicious at all. The doctor did not suspect abuse.

127.    I.D. and J.D. then remained in custody of relatives for about three months.

128.    On or around September 7, 2017, DeRosa completed her police report.

129.    In her report, DeRosa wrote that she had watched the entirety of the video from the daycare, that there was no misconduct captured (this was a lie), and that the mark could not have been caused by a daycare employee (this was also a lie).

130.     On September 8, 2017, there was a hearing on the petition for adjudication and DCFS was granted temporary custody of I.D. and J.D. Ciardini and Wolf were directly involved in and responsible for the hearing—they requested the hearing and filed a report recommending that I.D. and J.D. be placed in DCFS' custody.

131.     Ciardini and Wolf were responsible for Tricia Danyus and Justin Danyus temporarily losing custody of I.D., J.D., and J.H.

132.     On or around September 13, 2017, Tricia Danyus was indicted by a grand jury on two felony charges: false report of an offense and obstruction of justice. The grand jury witness, a Town of Normal, Illinois Police Department Sergeant, testified that DeRosa had watched hours upon hours of surveillance footage from inside the daycare center. He further claimed that the footage from the entire day of August 22, 2017 confirmed that J.D. had not been battered at the daycare. The Sergeant also testified that Tricia Danyus had admitted to having smacked J.D. on the bottom and having made her Facebook post because she hated the daycare and blamed them for behavioral issues with I.D.

133.     On September 15, 2017, Tricia Danyus was formally arraigned.

134.     She was formally charged with 1) false report of offense, a class 4 felony; and 2) obstruction of justice, a class 4 felony.

135.     On or around October 16, 2017, DCFS, through Ciardini and Wolf, indicated Tricia Danyus for child abuse, despite Ciardini previously telling her that, *even if she had spanked J.D.*, that would not amount to abuse or neglect, and despite admitting to having engaged in worse conduct herself.

136.     On October 18, 2017, the state's attorney filed an additional domestic battery charge against Tricia Danyus.

16

137.     On or around October 19, 2017, DCFS, through Ciardini and Wolf, indicated Justin Danyus for child neglect, simply because he had been "unwilling to consider that his wife [had]caused the mark to J.D." This does not constitute neglect.

138.     Ciardini and Wolf subsequently falsely told Tricia Danyus and Justin Danyus multiple times that they could not appeal the indications, and that the indications would remain on their records for five years.

139.     Tricia Danyus and Justin Danyus retained and paid a criminal attorney to defend against the criminal charges against Tricia Danyus.

140.     Their attorney was able to obtain the video from the daycare, and he discovered the shocking abuse and neglect by the employees.

141.     Their attorney then reported this to DCFS and requested that DCFS investigate the daycare.

142.     On November 27, 2017, I.D. and J.D. were returned to Tricia and Justin Danyus, but the adjudication proceedings were continued for another six months.

143.     On or around December 13, 2017, DCFS opened a complaint against A Shining Star Learning Center.

144.     On or around January 12, 2018, DCFS cited the daycare for multiple licensing violations based on the video footage.

145.     In or around February of 2018, Tricia Danyus and Justin Danyus' custody of I.D. and J.D. was finally fully restored.

146.     In or around May of 2018, the petition for adjudication was finally dismissed in Justin Danyus and Tricia Danyus' favor.

147. On June 22, 2018, the Circuit Court of the Eleventh Judicial Circuit, County of McLean suppressed Tricia Danyus' "confession" because it was involuntary and had been obtained by improper inducements.

148. After the suppression of the "confession," on July 27, 2018, Tricia Danyus agreed with the prosecution to plead guilty to misdemeanor disorderly conduct (amended from a class 4 felony, false report of offense, to a class C misdemeanor, disorderly conduct), so that the case would not be dragged out any longer. In doing so, she pleaded guilty only to committing an "act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace."

149. The felony obstruction of justice charge was dismissed *via nolle prosequi* on July 27, 2018.

150. The domestic battery charge was dismissed on July 31, 2018.

151. Tricia Danyus was sentenced to six months of court supervision and four days in jail.

152. The DCFS indications against both Tricia Danyus and Justin Danyus were voluntarily unfounded by DCFS on or around January 3, 2019, after Justin Danyus filed a motion for summary judgment demonstrating that Ciardini had engaged in blatant misconduct.

153. The Office of the Inspector General launched an investigation into Ciardini's misconduct. Tricia Danyus and Justin Danyus have been told that the results are confidential.

154. These events received significant and frequent coverage from approximately eight different local media outlets throughout the process.

155. Both Tricia Danyus and Justin Danyus have suffered terrible and irreparable harm as a result of Defendants' actions.

156. Tricia Danyus spent months facing the prospect of significant prison time.

157. Tricia Danyus and Justin Danyus had their foster home license revoked, and a hold was placed on their home, which prevented them from fostering children, including J.H.

158.    On or around September 19, 2017, because of the DCFS indication, Tricia Danyus lost her job at the Normal Community High School, as well as the ability to obtain similar jobs. She applied to several other similar positions and was turned down each time.

159.    Tricia Danyus and Justin Danyus lost custody of I.D. and J.D. for about three months.

160.    J.H. was not allowed to stay with Tricia Danyus and Justin Danyus until July 11, 2019.

161.    Tricia Danyus and Justin Danyus lost the ability to foster or adopt another biological sibling of I.D. and J.D.

162.    Tricia Danyus and Justin Danyus were forced to move homes because they could no longer afford the one that they had been living in.

163.    DCFS, through Wolf and Ciardini, placed various requirements and restrictions on Tricia Danyus and Justin Danyus that remained in place for months.

164.    Tricia Danyus and Justin Danyus were subjected to approximately nine home/visits evaluations by DCFS. They also were required to defend themselves in the adjudication proceedings.

165.    Tricia Danyus was required to attend approximately eight criminal court dates. Tricia Danyus and Justin Danyus lost approximately $1,000 taking time off and/or traveling to attorney meetings, court dates, and caseworker meetings.

166.    Tricia and Justin Danyus paid a criminal attorney approximately $15,000 to defend Tricia Danyus. They paid an additional $750, approximately, in court fees and costs.

167.    Tricia Danyus and Justin Danyus have suffered irreparable harm to their familial relationships and to their reputations.

168.    Plaintiffs have retained attorneys to pursue relief based on the violations alleged herein.

**Count I: Unreasonable Post-Arrest Seizure and/or Pre-Trial Due Process Violations**
*Brought by Tricia Danyus Against Defendants DeRosa and Ciardini*

169.    Plaintiffs reallege the above paragraphs as if fully set forth here.

170.    The U.S. Constitution protects people from post-arrest, pre-trial seizures that are not supported by probable cause.

171.    Defendants DeRosa and Ciardini violated Tricia Danyus' Fourth Amendment Rights by knowingly extracting a false confession from Tricia Danyus that was then used as the sole basis to secure Tricia Danyus' prosecution for two felonies and a domestic battery charge (which resulted in her having to comply with pre-trial conditions of release).

172.    There was no probable cause to believe that Tricia Danyus had committed *any* felony. There was no probable cause to believe that Tricia Danyus had committed domestic battery.

173.    As a result of these actions, Tricia Danyus spent months facing the prospect of significant prison time, was forced to comply with pre-trial conditions of release, was forced to defend herself against two felonies and a domestic battery charge, and was forced to attend numerous court dates.

174.    Tricia Danyus was harmed as a result of these actions.

175.    Based on the above described facts, DeRosa and Ciardini are liable to Tricia Danyus under 42. U.S.C. § 1983.

176.    Tricia Danyus asks that punitive damages be awarded against DeRosa and Ciardini in order to punish them and to deter them and others like them from engaging in such behavior in the future.

177.    Additionally, the U.S. Constitution provides that no person shall be deprived of liberty without the due process of law.

178.     Plaintiffs recognize that the 7th Circuit has recently opined that "the Fourth Amendment, not the Due Process Clause, governs a claim for wrongful pretrial detention," indicating that a person's liberty interest in not being detained without probable cause is only actionable under the Fourth Amendment. *Lewis v. City of Chicago*, 914 F.3d 472, 475 (7th Cir. 2019).

179.     However, it is Plaintiffs' position that the U.S. Constitution does protect against certain pre-trial deprivations of liberty resulting from the use of fabricated evidence, or, as here, false and involuntary confessions extracted by improper inducements. The existence of such a claim was recently implicitly acknowledged by the Supreme Court. *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019).

180.     DeRosa and Ciardini violated Tricia Danyus' due process rights by knowingly extracting a false confession from her, which was then used as the sole basis to secure her prosecution and deprive her of various liberty interests.

181.     As a result of these actions, Tricia Danyus spent months facing the prospect of significant prison time, was forced to comply with pre-trial conditions of release, was forced to defend herself against two felonies and a domestic battery charge, and was forced to attend numerous court dates.

182.     Tricia Danyus was harmed as a result of these actions.

183.     Based on the above described facts, DeRosa and Ciardini are liable to Tricia Danyus under 42. U.S.C. § 1983.

184.     Tricia Danyus asks that punitive damages be awarded against DeRosa and Ciardini in order to punish them and to deter them and other like them from engaging in such behavior in the future.

WHEREFORE, Tricia Danyus requests that Defendants DeRosa and Ciardini be found liable, that judgment be entered against them, and that Tricia Danyus be awarded all remedies to which she is entitled under the law, including:

      a.   pecuniary damages;

      b.   compensatory damages;

      c.   punitive damages;

      d.   attorney's fees pursuant to 42 U.S.C. § 1988;

      e.   and costs.

**COUNT II: Knowing Compulsion of an Involuntary and False Confession**
*Brought by Tricia Danyus Against DeRosa and Ciardini*

185.     Plaintiffs reallege the above paragraphs as if fully set forth here.

186.     The U.S. Constitution protects people from compelled self-incrimination in a criminal case.

187.     Defendants DeRosa and Ciardini violated Tricia Danyus' Fifth Amendment Rights by using improper inducements and lies to knowingly compel an involuntary and false confession from Tricia Danyus.

188.     This false confession was used as the sole basis to charge, indict, and prosecute Tricia Danyus for two felonies and a domestic battery charge, until at least June 22, 2018, when the "confession" was suppressed.

189.     As a result of these actions, Tricia Danyus spent months facing the prospect of significant prison time, was forced to comply with pre-trial conditions of release, was forced to defend herself against two felonies and a domestic battery charge, and was forced to attend numerous court dates.

190.     These actions were willful, wanton, and conscience-shocking.

191.     Tricia Danyus was harmed as a result of these actions.

192.     Based on the above described facts, DeRosa and Ciardini are liable to Tricia Danyus under 42. U.S.C. § 1983.

193.     Tricia Danyus asks that punitive damages be awarded against DeRosa and Ciardini in order to punish them and to deter them and other like them from engaging in such behavior in the future.

WHEREFORE, Tricia Danyus requests that Defendants DeRosa and Ciardini be found liable, that judgment be entered against them, and that Tricia Danyus be awarded all remedies to which she is entitled under the law, including:

   a.   pecuniary damages;

   b.   compensatory damages;

   c.   punitive damages;

   d.   attorney's fees pursuant to 42 U.S.C. § 1988;

   e.   and costs.

**COUNT III: Retaliation in Violation of Tricia Danyus' Right to Freedom of Speech**
*Brought by Tricia Danyus Against DeRosa, Ciardini, Wolf, and Bleichner*

194.     Plaintiffs reallege the above paragraphs as if fully set forth here.

195.     The U.S. Constitution protects people from being retaliated against by government actors for engaging in speech addressing a matter of public concern.

196.     Tricia Danyus engaged in speech protected by the First Amendment when she publicly posted her concerns about A Shining Star Learning Center on Facebook.

197.     Defendant DeRosa retaliated against Tricia Danyus for engaging in this speech by using improper inducements and lies to knowingly compel an involuntary and false confession from

Tricia Danyus, and by causing her to be prosecuted for two felonies and a domestic battery charge based solely on that "confession."

198.    Defendants DeRosa and Bleichner retaliated against Tricia Danyus for engaging in this speech by issuing a press release publicly declaring that she had falsely reported that employees of A Shining Star Learning Center had abused her children, despite the fact that there was video evidence demonstrating that employees of the daycare had caused the marks on her children.

199.    Defendant Ciardini retaliated against Tricia Danyus for engaging in this speech by using improper inducements and lies to knowingly compel an involuntary and false confession from Tricia Danyus, and by causing her to be prosecuted for two felonies and a domestic battery charge based solely on that "confession."

200.    Defendants Ciardini and Wolf retaliated against Tricia Danyus for engaging in this speech by indicating her for child abuse or by causing DCFS to indicate her for child abuse, by indicating Justin Danyus for child neglect or by causing DCFS to indicate him for child neglect, by requesting the adjudication hearing and protective custody, by causing her and Justin Danyus to lose their foster home license, by causing her and Justin Danyus to lose custody of I.D., J.D., and J.H. for months, and by causing her and Justin Danyus to lose the ability to adopt J.H. and the other biological sibling of I.D. and J.D.

201.    None of the Defendants had legally sufficient cause for their actions. Instead, they committed these acts to protect A Shining Star Learning Center from losing business, despite knowing that its employees had engaged in child abuse.

202.    Tricia Danyus was harmed as a result of these actions.

203.    Based on the above described facts, DeRosa, Ciardini, Wolf, and Bleichner are liable to Tricia Danyus under 42. U.S.C. § 1983.

204.    Tricia Danyus asks that punitive damages be awarded against DeRosa, Ciardini, Wolf, and Bleichner in order to punish them and to deter them and other like them from engaging in such behavior in the future.

WHEREFORE, Tricia Danyus requests that Defendants DeRosa, Ciardini, Wolf, and Bleichner be found liable, that judgment be entered against them, and that Tricia Danyus be awarded all remedies to which she is entitled under the law, including:

a.   pecuniary damages;

b.   compensatory damages;

c.   punitive damages;

d.   attorney's fees pursuant to 42 U.S.C. § 1988;

e.   and costs.

### COUNT IV: Equal Protection Violations
*Brought by Tricia Danyus Against DeRosa, Bleichner, Ciardini, and Wolf*
*And Brought by Justin Danyus Against Ciardini and Wolf*

205.    Plaintiffs reallege the above paragraphs as if fully set forth here.

206.    The U.S. Constitution protects people from irrational and arbitrary adverse treatment by government actors.

207.    Defendant DeRosa intentionally violated Tricia Danyus' equal protection rights by using improper inducements and lies to knowingly compel an involuntary and false confession from Tricia Danyus, and by causing her to be prosecuted for two felonies and a domestic battery charge based solely on that "confession," because she wanted to protect A Shining Star Learning Center from losing business, despite knowing that its employees had engaged in child abuse.

208.    Defendants DeRosa and Bleichner intentionally violated Tricia Danyus' equal protection rights by issuing a press release publicly declaring that she had falsely reported that employees of A Shining Star Learning Center had abused her children, despite the fact that there was

video evidence demonstrating that employees of the daycare had abused children, including I.D., and had caused the marks on I.D. and J.D.

209.   Defendant Ciardini intentionally violated Tricia Danyus' equal protection rights by using improper inducements and lies to knowingly compel an involuntary and false confession from Tricia Danyus, and by causing her to be prosecuted for two felonies and a domestic battery charge based solely on that "confession," because she wanted to protect A Shining Star Learning Center from losing business, despite knowing that its employees had engaged in child abuse.

210.   Defendants Ciardini and Wolf intentionally violated Tricia Danyus' and Justin Danyus' equal protection rights by indicating Tricia Danyus for child abuse or by causing DCFS to indicate her for child abuse, by indicating Justin Danyus for child neglect or by causing DCFS to indicate him for child neglect, by requesting the adjudication hearing and protective custody, by causing Tricia Danyus and Justin Danyus to lose their foster home license, by causing Tricia Danyus and Justin Danyus to lose custody of I.D., J.D., and J.H. for months, and by causing Tricia Danyus and Justin Danyus to lose the ability to adopt J.H. and the other biological sibling of I.D. and J.D. Defendants Ciardini and Wolf did this because they wanted to protect A Shining Star Learning Center from losing business, despite knowing that its employees had engaged in child abuse.

211.   The way in which these Defendants treated the daycare, compared to the way that they treated Tricia Danyus and Justin Danyus, as more fully described herein, demonstrates that they had an illegitimate animus against Tricia Danyus and Justin Danyus and intended to harm them.

212.   These actions were willful, wanton, and conscience-shocking.

213.   Tricia Danyus and Justin Danyus were harmed as a result of these actions.

214.   Based on the above described facts, DeRosa, Ciardini, Wolf, and Bleichner are liable to Tricia Danyus under 42. U.S.C. § 1983.

215.     Based on the above described facts, Ciardini and Wolf are liable to Justin Danyus under 42. U.S.C. § 1983.

216.     Tricia Danyus asks that punitive damages be awarded against DeRosa, Ciardini, Wolf, and Bleichner in order to punish them and to deter them and other like them from engaging in such behavior in the future.

217.     Justin Danyus asks that punitive damages be awarded against Ciardini and Wolf, in order to punish them and to deter them and other like them from engaging in such behavior in the future.

WHEREFORE, Tricia Danyus requests that Defendants DeRosa, Ciardini, Wolf, and Bleichner be found liable, that judgment be entered against them, and that Tricia Danyus be awarded all remedies to which she is entitled under the law, including:

   a.   pecuniary damages;

   b.   compensatory damages;

   c.   punitive damages;

   d.   attorney's fees pursuant to 42 U.S.C. § 1988;

   e.   and costs.

WHEREFORE, Justin Danyus requests that Defendants Ciardini and Wolf be found liable, that judgment be entered against them, and that Justin Danyus be awarded all remedies to which he is entitled under the law, including:

   a.   pecuniary damages;

   b.   compensatory damages;

   c.   punitive damages;

   d.   attorney's fees pursuant to 42 U.S.C. § 1988;

   e.   and costs.

27

## COUNT V: Procedural Due Process Violations
*Brought by Tricia Danyus Against Ciardini and Wolf*

218.    Plaintiffs reallege the above paragraphs as if fully set forth here.

219.    The U.S. Constitution protects people from deprivations of liberty without due process of law.

220.    Defendants Ciardini and Wolf deprived Tricia Danyus of a liberty interest in pursuing the occupation of her choice by indicating her for child abuse (or causing her to be indicated) and causing harm to her reputation without sufficient cause and without employing appropriate procedural safeguards.

221.    Tricia Danyus was indicated based solely on the unlawfully obtained, false confession, without any consideration of exonerating evidence, without any pre-indication hearing or conference.

222.    This indication was then disseminated to her employer and to potential employers.

223.    As a result of Tricia Danyus' indication, she lost her job at a local high school, and it became virtually impossible for her to find employment in her chosen field, which involved childcare.

224.    Tricia Danyus was harmed as a result of these actions.

225.    Based on the above described facts, Ciardini and Wolf are liable to Tricia Danyus under 42. U.S.C. § 1983.

226.    Tricia Danyus asks that punitive damages be awarded against Ciardini and Wolf, in order to punish them and to deter them and other like them from engaging in such behavior in the future.

WHEREFORE, Tricia Danyus requests that Defendants Ciardini and Wolf be found liable, that judgment be entered against them, and that Tricia Danyus be awarded all remedies to which she is entitled under the law, including:

      a.   pecuniary damages;

      b.   compensatory damages;

      c.   punitive damages;

      d.   attorney's fees pursuant to 42 U.S.C. § 1988;

      e.   and costs.

### COUNT VI: Substantive Due Process Violations
*Brought by Tricia Danyus and Justin Danyus Against Ciardini and Wolf*

227.     Plaintiffs reallege the above paragraphs as if fully set forth here.

228.     The U.S. Constitution protects people from the exercise of governmental authority without reasonable justification.

229.     Defendants Ciardini and Wolf unlawfully deprived Tricia Danyus and Justin Danyus of their fundamental right to familial relations when they indicated them (or caused them to be indicated) and engaged in other conduct, as more fully alleged herein, that caused I.D., J.D., and J.H. to be removed from their custody, care, and control without sufficient cause or any legitimate basis (based solely on an unlawfully obtained "confession," despite video evidence that employees of A Shining Star Learning Center had caused the marks on J.D. and I.D.).

230.     These actions were willful, wanton, and conscience-shocking.

231.     Tricia Danyus and Justin Danyus were harmed as a result of these actions.

232.     Based on the above described facts, Ciardini and Wolf are liable to Tricia Danyus and Justin Danyus under 42. U.S.C. § 1983.

233.    Tricia Danyus and Justin Danyus ask that punitive damages be awarded against Ciardini and Wolf, in order to punish them and to deter them and other like them from engaging in such behavior in the future.

WHEREFORE, Tricia Danyus and Justin Danyus request that Defendants Ciardini and Wolf be found liable, that judgment be entered against them, and that Tricia Danyus and Justin Danyus be awarded all remedies to which they are entitled under the law, including:

      a.   pecuniary damages;

      b.   compensatory damages;

      c.   punitive damages;

      d.   attorney's fees pursuant to 42 U.S.C. § 1988;

      e.   and costs.

## COUNT VII: 42 U.S.C. § 1983 Conspiracy
*Brought by Tricia Danyus Against Ciardini*

234.    Plaintiffs reallege the above paragraphs as if fully set forth here.

235.    Individuals acting as private citizens, and not under the color of state law, can be held liable under 42 U.S.C. § 1983 for depriving people of constitutional rights when acting jointly with state actors.

236.    To the extent that Ciardini was not acting under the color of state law when she helped DeRosa extract an involuntary and false confession from Tricia Danyus, she is liable for the resulting deprivations based on a conspiracy theory.

237.    DeRosa and Ciardini overtly planned to jointly extract the "confession" from Tricia Danyus, in order to falsely pin the child "abuse" on her and to protect A Shining Star Learning Center from losing business.

238.    They discussed this plan prior to and in between the interrogations of Tricia Danyus on September 1, 2017.

239.    Ciardini was a willful participant in the efforts to unlawfully compel this confession.

240.    Ciardini and DeRosa carried out this plan, depriving Tricia Danyus of various constitutional rights, as more fully alleged herein.

241.    Tricia Danyus was harmed as a result of these actions.

242.    Based on the above described facts, Ciardini is liable to Tricia Danyus under 42. U.S.C. § 1983 for the constitutional deprivations alleged in Counts I-IV that were caused by the unlawful compulsion of the "confession"

243.    Tricia Danyus asks that punitive damages be awarded against Ciardini in order to punish her and to deter her and other like her from engaging in such behavior in the future.

WHEREFORE, Tricia Danyus requests that Defendant Ciardini be found liable, that judgment be entered against her, and that Tricia Danyus be awarded all remedies to which she is entitled under the law, including:

        a.   pecuniary damages;

        b.   compensatory damages;

        c.   punitive damages;

        d.   attorney's fees pursuant to 42 U.S.C. § 1988;

        e.   and costs.

### COUNT VIII: State Law Malicious Prosecution (Criminal)
*Brought by Tricia Danyus Against DeRosa, Ciardini, and the Town of Normal, Illinois*

244.    Plaintiffs reallege the above paragraphs as if fully set forth here.

245.     DeRosa and Ciardini commenced and continued criminal proceedings against Tricia Danyus—DeRosa and Ciardini caused her to be charged with and prosecuted for two felonies and domestic battery.

246.     There was no probable cause for any of these charges. The sole basis for them was Tricia Danyus' unlawfully compelled "confession."

247.     DeRosa and Ciardini acted with malice, given that there was no legally sufficient evidence that Tricia Danyus had committed these crimes, and given that they were motivated by a desire to protect A Shining Star Learning Center, despite the fact that there was evidence that its employees had abused children, including I.D., and had caused the marks on I.D. and J.D.

248.     DeRosa facilitated this malicious prosecution in one or more of the following ways: by compelling the "confession"; by providing the information she unlawfully obtained to a police sergeant who reiterated that information in front of a grand jury, by creating false and/or misleading criminal complaints and police reports, which she provided to prosecutors; and by giving false and misleading information to prosecutors.

249.     Ciardini facilitated this malicious prosecution by unlawfully compelling the "confession."

250.     The felony obstruction of justice charge was dismissed *via nolle prosequi* after the "confession" was suppressed, on July 27, 2018.

251.     The domestic battery charge was dismissed after the "confession" was suppressed, on July 31, 2018.

252.     The felony false report of offense charge was amended to a misdemeanor disorderly conduct charge as part of a plea deal July 27, 2018.

253.     Tricia Danyus pleading to misdemeanor disorderly conduct is not evidence of probable cause for false report of offense felony charge, as she was only required to admit to having

committed an "act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." She in no way admitted to having known that the allegations she reported against the daycare were false, which would have been required for the felony false report of offense charge.

254.    Tricia Danyus was harmed as a result of these actions.

255.    In committing the acts alleged in the preceding paragraphs, DeRosa was a member of the Town of Normal, Illinois Police Department, acting at all relevant times within the scope of her employment.

256.    Defendant Town of Normal, Illinois in liable as a principal for all torts committed by its agents in the scope of their employment.

257.    Therefore, Ciardini, DeRosa, and the Town of Normal, Illinois are liable to Tricia Danyus for Malicious Prosecution.

258.    DeRosa's and Ciardini's actions were intentional, willful, wanton, reprehensible, and proximately caused harm to Tricia Danyus.

259.    Therefore, justice and the public good require the imposition of punitive damages against DeRosa and Ciardini.

WHEREFORE, Tricia Danyus requests that Defendants DeRosa, Ciardini, and the Town of Normal be found liable, that judgment be entered against them, and that Tricia Danyus be awarded all remedies to which she is entitled under the law, including:

    a.  pecuniary damages;

    b.  compensatory damages;

    c.  punitive damages (against DeRosa and Ciardini only);

    d.  and costs.

### COUNT IX: Civil Conspiracy
*Brought by Tricia Danyus Against Ciardini*

260.    Plaintiffs reallege the above paragraphs as if fully set forth here.

261.    Individuals acting concertedly in furtherance of tortious acts can be held vicariously liable for the tortious acts of each other.

262.    To the extent that Ciardini did not herself commit malicious criminal prosecution of Tricia Danyus, as described in Count VIII, she is vicariously liable for DeRosa's malicious criminal prosecution of Tricia Danyus based on a civil conspiracy theory.

263.    DeRosa and Ciardini overtly planned to jointly extract the "confession" from Tricia Danyus, in order to falsely pin the child "abuse" on her and to protect A Shining Star Learning Center.

264.    They discussed this plan prior to and in between the interrogations of Tricia Danyus on September 1, 2017.

265.    Ciardini was a willful participant in the efforts to unlawfully compel this confession.

266.    Ciardini and DeRosa carried out their plan, causing Tricia Danyus to be maliciously prosecuted based solely on an unlawfully compelled "confession."

267.    Tricia Danyus was harmed as a result of these actions.

268.    Based on the above described facts, Ciardini is vicariously liable to Tricia Danyus for DeRosa's malicious criminal prosecution of Tricia Danyus.

269.    Ciardini's actions were intentional, willful, wanton, reprehensible, and proximately caused harm to Tricia Danyus.

270.    Tricia Danyus asks that punitive damages be awarded against Ciardini in order to punish her and to deter her and others like her from engaging in such behavior in the future.

WHEREFORE, Tricia Danyus requests that Defendant Ciardini be found liable, that judgment be entered against her, and that Tricia Danyus be awarded all remedies to which she is entitled under the law, including:

      a.   pecuniary damages;

      b.   compensatory damages;

      c.   punitive damages;

      d.   and costs.

### COUNT X: State Law Malicious Prosecution (Administrative and Adjudicatory)
*Brought by Tricia Danyus and Justin Danyus Against Ciardini and Wolf*

271.     Plaintiffs reallege the above paragraphs as if fully set forth here.

272.     Ciardini and Wolf commenced and continued administrative and adjudicatory proceedings against Tricia Danyus and Justin Danyus—they caused them to be indicated by DCFS and caused them to face an adjudicatory proceeding that deprived them of custody of I.D. and J.D.

273.     There was no legally sufficient cause for any of these proceedings. The sole basis for them was Tricia Danyus' unlawfully compelled "confession."

274.     In fact, Ciardini expressly told Tricia Danyus that, even if she had spanked J.D., that would not amount to abuse or neglect.

275.     Further, a person simply refusing to acknowledge that his wife may have abused their child does not constitute "neglect."

276.     Ciardini and Wolf acted with malice, given that there was no legally sufficient evidence that Tricia Danyus had abused a child or that Justin Danyus had neglected one, and given that they were motivated by a desire to protect A Shining Star Learning Center, despite the fact that there was evidence that its employees had abused children, including I.D., and caused the marks on I.D. and J.D.

277.    Ciardini facilitated this malicious prosecution in one or more of the following ways: by compelling the "confession"; by providing the information she unlawfully obtained to DCFS, by creating false and/or misleading reports, which she provided to DCFS; by indicting Tricia and Justin Danyus (or causing them to be indicated) without legally sufficient cause; and by giving false and misleading  information to the County of McLean Court and the DCFS administrative hearings unit.

278.    Wolf facilitated this malicious prosecution in one or more of the following ways: by indicting Tricia and Justin Danyus (or causing them to be indicated) without legally sufficient cause (solely on the basis of a confession she knew was unlawfully obtained and false); and by knowingly giving false and misleading information to the County of McLean Court and the DCFS administrative hearings unit.

279.    The adjudicatory hearing terminated in Justin Danyus and Tricia Danyus' favor in or around May of 2018 and they were granted full custody of I.D. and J.D. in or around February of 2018.

280.    The administrative hearings resulting from the indications terminated in Justin Danyus' and Tricia Danyus' favor on or around January 3, 2019, when the indications were voluntarily unfounded.

281.    Tricia Danyus and Justin Danyus were harmed as a result of these actions.

282.    Therefore, Ciardini and Wolf are liable to Tricia Danyus and Justin Danyus for Malicious Prosecution.

283.    Ciardini's and Wolf's actions were intentional, willful, wanton, reprehensible, and proximately caused harm to Tricia Danyus and Justin Danyus.

284.    Therefore, justice and the public good require the imposition of punitive damages against Ciardini and Wolf.

WHEREFORE, Tricia Danyus and Justin Danyus request that Defendants Ciardini and Wolf be found liable, that judgment be entered against them, and that Tricia Danyus and Justin Danyus be awarded all remedies to which they are entitled under the law, including:

    a.   pecuniary damages;

    b.   compensatory damages;

    c.   punitive damages;

    d.   and costs.

## COUNT XI: Intentional Infliction of Emotional Distress
*Brought by Tricia Danyus and Justin Danyus Against Ciardini and Wolf*

285.    Plaintiffs reallege the above paragraphs as if fully set forth here.

286.    The conduct of Ciardini and Wolf described herein was extreme and outrageous.

287.    Ciardini and Wolf knew or should have known that there was a high probability that their conduct, as described more fully herein, would cause Tricia Danyus and Justin Danyus severe mental, physical, or emotional harm.

288.    Ciardini and Wolf intended to cause Tricia Danyus and Justin Danyus severe mental, physical, or emotional harm.

289.    As a result of Ciardini's and Wolf's conduct, Tricia Danyus and Justin Danyus did suffer severe harm.

290.    Ciardini's and Wolf's conduct was beyond the bounds of decency.

291.    Therefore, Ciardini and Wolf are liable to Tricia Danyus and Justin Danyus for intentional infliction of emotional distress.

292.    Ciardini's and Wolf's actions were intentional, willful, wanton, reprehensible, and proximately caused harm to Tricia Danyus and Justin Danyus.

293.    Therefore, justice and the public good require the imposition of punitive damages against Ciardini and Wolf.

WHEREFORE, Tricia Danyus and Justin Danyus request that Defendants Ciardini and Wolf be found liable, that judgment be entered against them, and that Tricia Danyus and Justin Danyus be awarded all remedies to which they are entitled under the law, including:

        a.  pecuniary damages;

        b.  compensatory damages;

        c.  punitive damages;

        d.  and costs.

### COUNT XII: Indemnification
*Brought by Tricia Danyus Against the Town of Normal, Illinois*

294.    Plaintiffs reallege the above paragraphs as if fully set forth here.

295.    Pursuant to 745 ILCS 10/9-102, the Town of Normal, Illinois is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorneys' fees and costs) for which an employee, while acting within the scope of his or her employment, is liable.

296.    The acts of DeRosa and Bleichner described herein were committed within the scope of their employment.

297.    In the event that a judgment for compensatory damages is entered against DeRosa and/or Bleichner, the Town of Normal must pay the judgment and may pay the associated attorneys' fees and costs.

WHEREFORE, Tricia Danyus requests that Defendant Town of Normal, Illinois be ordered to pay her the full sum of any judgment against DeRosa and/or Bleichner, except for punitive damages.

**<u>Jury Demand</u>**

298.    Plaintiffs demand trial by jury.


Respectfully submitted by:


<u>s/Steven J. Molitor</u>

Law Office of Julie O. Herrera
53 W. Jackson, Suite 1615
Chicago, IL 60604
Tel: 312-697-0022
Fax: 312-697-0812
<u>smolitor@julieherreralaw.com</u>