E-FILED
Friday, 08 January, 2021  12:25:33 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| TRICIA DANYUS and JUSTIN DANYUS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 19-1258 |
| | ) | |
| KENDRA SLAMA DEROSA, RICK | ) | |
| BLEICHNER, THERESA CIARDINI, | ) | |
| TRACY WOLF, and TOWN OF NORMAL, | ) | |
| ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant Tracy Wolf's ("Wolf") Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12 (c). ECF No. 52. For the reasons stated below, Defendant Wolf's Motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiffs Tricia Danyus ("Tricia") and Justin Danyus ("Justin") (collectively "Plaintiffs") are foster parents to J.H., who is now sixteen years old, and the adoptive parents of I.D., who is now four years old, and J.D., who is now three years old.[1] This case stems from a child abuse investigation into Plaintiffs after they posted images online of their children with certain bruises that they believed came from employees of a daycare in Normal, Illinois. Tricia was initially charged with obstruction of justice and filing a false report after she confessed she had falsely reported that daycare employees had abused her children and that she had caused the bruises instead. The trial court later suppressed Tricia's confession because it was involuntary and had

---

[1] The alleged facts in the Background section are derived from Plaintiffs' Complaint (ECF No. 1).

been obtained by improper inducements. After the confession was suppressed, Tricia agreed with the prosecution to plead guilty to disorderly conduct. Plaintiffs were also indicated by the Illinois Department of Children and Family Services ("DCFS") during the abuse investigation, but the indications against Plaintiffs were eventually unfounded. Defendant Tracy Wolf ("Wolf") is a Public Service Administrator for DCFS. According to Plaintiffs, Wolf was part of the process that removed the children from them during the child abuse investigation. Because the Court recounted in detail the background of this case in its previous order addressing Defendants' motions to dismiss, the Court will incorporate the remaining alleged facts in this Opinion. *See* ECF No. 29.

On July 26, 2019, Plaintiffs filed a Complaint. ECF No. 1. On October 28, 2019, Defendants DeRosa, Bleichner, and the Town of Normal filed a motion to dismiss under Fed. R. Civ. P 12(b)(6) for the claims against them. ECF No. 18. On December 12, 2019, Defendants Ciardini and Wolf filed a motion to dismiss under Fed. R. Civ. P. 8(a) and 12(b)(6). ECF No. 23. Defendants Ciardini and Wolf's motion focused primarily on Rule 8(a) and there was not argumentation provided on which counts should be dismissed under Rule 12(b)(6). *Id*. On December 23, 2019, Plaintiffs filed their response to Defendants' motions. ECF No. 28. On March 10, 2020, the Court entered its Order and Opinion granting in part and denying in part Defendants' motions. ECF No. 29. The Court ruled that Counts II and XII remained, while Counts III, IV, and VIII were dismissed without prejudice. *Id.* On October 2, 2020, Defendant Wolf filed this instant Motion for Judgment on the Pleadings under Rule 12 (c) as to Counts V, VI, X, and XI. ECF No. 52. On November 13, 2020, Plaintiffs filed their response. ECF No. 55. This Opinion follows.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings. *Id*. The same

standard applies for deciding a Rule 12(c) motion as that used when reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir.2007). Therefore, under Rule 12(c) the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Finch v. Peterson*, 622 F.3d 725, 728 (7th Cir. 2010).

Rule 12(c) permits judgment based on the pleadings alone, which include the complaint, the answer, and any written instruments attached as an exhibit. *See Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). To avoid dismissal, a plaintiff must plead sufficient facts to state a claim of relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). When deciding Rule 12(c) motions, courts need not ignore facts contained in the pleadings that undermine a plaintiff's claim. *See Northern Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d at 452.

## ANALYSIS

### I.      Counts V and VI

#### A.      Procedural Due Process

Wolf argues that Tricia has failed to establish that she was entitled to due process in the form of a pre-indication hearing or conference before being indicated by DCFS. Tricia claims that she has plausibly alleged that Wolf indicated her for child abuse based solely on her coerced confession without granting her the opportunity to be heard on the matter.

To maintain a due process action, a plaintiff must establish that a state actor has deprived her of a constitutionally protected liberty or property interest without due process of law. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013). "The Supreme Court has said that parental rights cannot be denied without an 'opportunity for them to be heard at a meaningful time and in a meaningful

3

manner.' " *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1020 (7th Cir. 2000) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Accordingly, in order to proceed with her claim against Wolf, Tricia must allege sufficient facts to plausibly suggest that indicating her for child abuse without due process deprived Tricia of a constitutionally protected interest. *See generally Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 616 (7th Cir. 2002) (holding plaintiffs "failed to receive adequate notice either of the indicated findings or of the evidence relied upon in reaching this determination.")

Tricia alleges that because of the DCFS indication, she lost her job as a childcare worker at the local high school and was unable to obtain similar jobs. ECF No. 1 at 19, 28. The deprivation of a protected liberty in relation to one's reputation is measured by the "stigma plus" test, which requires a plaintiff to establish: (1) damage to a her good name, reputation, honor, and integrity, and (2) a resulting inability to pursue the occupation of her choice because of the label. *Mann*, 707 F.3d at 878 (internal citation omitted). When a state actor makes allegations that merely damage a person's reputation, no federally protected liberty interest has been implicated. *Paul v. Davis*, 424 U.S. 693, 711–12 (1976). Rather, it is only the "alteration of legal status," such as governmental deprivation of a right previously held, "which, combined with the injury resulting from the defamation, justifies the invocation of procedural safeguards." *Id.* at 708–09. "As such, when a state actor casts doubt on an individual's good name, reputation, honor or integrity in such a manner that it becomes virtually impossible for the individual to find new employment in his chosen field, the government has infringed upon that individual's liberty interest to pursue the occupation of his choice." *Dupuy v. Samuels*, 397 F.3d 493, 510-11 (7th Cir. 2005) (internal quotations and citation omitted). The Seventh Circuit has held that having an indicated report on the central register "squarely" implicates a protected liberty interest of a childcare worker. *Id.* at

510-11. Before a DCFS employee indicates or recommends indication, due process requires that employee to consider all available evidence on the issue. *Humphries v. Milwaukee County*, 702 F.3d 1003, 1008 (7th Cir. 2012) (internal citation omitted); *see Dupuy*, 397 F.3d at 506 ("[T]he investigator [must] take into account all of the available evidence that tends to show that abuse or neglect did or did not occur.").

Tricia has a protected liberty interest in being able to pursue her occupation of choice. *See Doyle*, 305 F.3d at 617. The Court finds that Tricia has sufficiently alleged that her indication deprived her of this interest because, while that finding remained in the register, she was unable to obtain another job. The next step in the Court's inquiry is whether, in effecting this deprivation, Tricia was provided with a constitutionally adequate means to challenge it. Tricia alleges that Wolf did not provide her with any hearing or consider all available exculpatory evidence such as: (1) J.H.'s testimony that she did not hear a smack or cry when Tricia was alone with J.D. and discovered the mark on J.D.'s body; (2) the doctor's statement that other bruising on the children's body was simply eczema; or (3) video footage demonstrating that daycare employees had caused the marks found on both J.D. and I.D. Taking these statements as true, the Court finds that Tricia has sufficiently alleged that Wolf deprived her of a constitutional interest without first providing due process of law.

Accordingly, the Court declines to dismiss Count V of Plaintiffs' Complaint.

### B.    *Substantive Due Process*

Wolf argues that Plaintiffs do not have a constitutionally protected interest in their relationship with foster children and substantive due process rights are not violated when minor victims of abuse are temporarily relocated. Plaintiffs claim they have plausibly alleged that Wolf

separated them from J.D. and I.D. without having evidence giving rise to a reasonable suspicion of abuse or danger. Thus, according to Plaintiffs, their substantive due process rights were violated.

A family's right to remain together without interference by the state is an aspect of substantive due process. *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 478 (7th Cir. 2011) (internal citation omitted). However, the state also has a valid interest in protecting children from abuse or neglect, and thus may interfere with a family's right to autonomy in certain instances. *Id.* These instances arise where the state or agency official has a "reasonable suspicion that a child has been abused or is in imminent danger of abuse." *Brokaw*, 235 F.3d at 1019 (internal citation omitted). A "reasonable suspicion" requires more than a hunch but less than probable cause. *Hernandez*, 657 F.3d at 478 (internal quotation omitted).

A liberal construction of Plaintiffs' allegations reflect that they have properly alleged Wolf deprived them of their parental rights based on false information and removed the children without a hearing. Wolf claims that she had good cause to believe that Tricia had abused at least one of the children and that Tricia confessed to causing the marks; however, Plaintiffs allege that Wolf knew Tricia's confession was false and unlawfully obtained, yet, sought and obtained temporary custody over J.D. and I.D. for months. Such allegations state a constitutional claim. *See Brokaw*, 235 F.3d at 1012 (finding substantive due process claims based on allegations that the defendants knew the allegations of child neglect were false or withheld material information and caused or conspired to cause the minor's removal of the home and separation from his parents); *Hernandez*, 657 F.3d at 479-80 (7th Cir. 2011) (the parents stated a familial relations substantive due process claim where they alleged that the defendants continued to hold their child in protective custody when the defendants knew they had no reason to do so); *Sebesta v. Davis*, No. 12 C 7834, 2013 WL 5408796, at *3 (N.D. Ill. Sept. 26, 2013) (mother stated a substantive due process claim when she alleged

facts suggesting that the defendants had no reasonable basis to indicate her for neglect); *Evans ex rel. Evans v. Richardson*, No. 08 C 5593, 2010 WL 1194272, at \*6 (N.D. Ill. March 19, 2010) (finding plaintiffs alleged a violation of their substantive due process right to familial relations when the defendants allegedly took the child into protective custody without evidence of abuse). Moreover, "good cause" is not the standard to determine whether the state may interfere with a family's relation; rather, it is reasonable suspicion. *Brokaw*, 235 F.3d at 1019. The Court finds that at this stage in the litigation process, Plaintiffs have properly pled a substantive due process claim.

Accordingly, the Court declines to dismiss Count VI of Plaintiffs' Complaint.

### C.    *Wolf's Personal Involvement*

Wolf argues that Plaintiffs have failed to establish that she personally indicated Tricia solely based on her coerced, false confession without considering other evidence and without a hearing. Plaintiffs claim that they have properly alleged that Wolf was directly involved and responsible for the indications and separation of Plaintiffs from their children.

It is well-settled that plaintiffs may only bring § 1983 claims against individuals who were personally involved in the constitutional deprivations they purport to have suffered. *See Vinning–El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011). The personal involvement requirement applies to all employees, including supervisors. *See Doyle*, 305 F.3d at 614. However, if a supervisor consented to the challenged conduct or directed it, that supervisor's personal involvement is a sufficient basis on which to base liability. *Id.* at 615; *see also Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001) (holding that a supervisory defendant to a § 1983 suit would be deemed sufficiently involved if he "directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent.").

The Court finds that Plaintiffs have adequately alleged Wolf's personal involvement. While Ciardini was the DCFS employee who was part of the police interrogation and directly questioned Tricia, Wolf is Ciardini's supervisor. Plaintiffs alleged that "Ciardini and Wolf were directly involved in and responsible for the hearing—they requested the hearing and filed a report recommending that I.D. and J.D. be placed in DCFS' custody." ECF No. 1 at 16. Other allegations that relate to Wolf's direct involvement include: "Wolf and Ciardini decided to take protective custody of I.D. and J.D" and "Ciardini and Wolf were responsible for Tricia Danyus and Justin Danyus temporarily losing custody of I.D., J.D., and J.H." *Id*. As such, according to the Complaint, Wolf consented or directed the decision to indicate Plaintiffs without a hearing or conference. *See Doyle*, 305 F.3d at 615.

Wolf also claims she is entitled to qualified immunity because she had no personal involvement in the investigation. *See Pearson v. Callahan,* 555 U.S. 223, 231 (2009) ("the doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (internal citation omitted)) However, as stated above, the Court finds that Plaintiffs have properly alleged Wolf's personal involvement at this stage.

Accordingly, the Court declines to dismiss Counts V and VI.

## II.     Counts X and XI

### A.     *Malicious Prosecution*

Wolf argues that Plaintiffs have failed to plead that the proceedings brought against them terminated in their favor, because the administrative proceeding resulted in a voluntary dismissal of the investigation. As a result, Wolf states their malicious prosecution claim fails. Plaintiffs argue

that a voluntary dismissal is a favorable termination unless the dismissal is for reasons not indicative of innocence.

Under Illinois law, to state a cause of action for malicious prosecution, a plaintiff must allege facts showing: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceedings; (4) the presence of malice; and (5) damages resulting to the plaintiff. *Mut. Med. Plans, Inc. v. County of Peoria*, 309 F.Supp.2d 1067, 1080 (C.D. Ill. 2004).

Plaintiffs allege that Wolf is liable for malicious prosecution because she was part of the indication process against Plaintiffs and acted with malice since she did not have legally sufficient cause. According to Plaintiffs, the administrative and adjudicatory proceedings against them were derived from a confession Wolf knew was unlawfully obtained, but Wolf proceeded to knowingly give false and misleading information to the McLean County Court and the DCFS administrative hearings unit. The hearings caused them to be indicated by DCFS and deprived them of custody of I.D. and J.D. These allegations satisfy the first, third, fourth, and fifth prong of a malicious prosecution claim.

Notwithstanding the above, the Court finds only one of the hearings satisfy the second prong of a malicious prosecution claim. Plaintiffs claim that because they were granted full custody of I.D. and J.D., the adjudicatory hearing terminated in their favor. Plaintiffs also state that the administrative hearings terminated in their favor because the indications were voluntarily unfounded. Plaintiffs receiving full custody of I.D. and J.D. certainly qualifies as a termination in Plaintiffs' favor; however, the Court finds that an unfounded determination from the administrative hearing does not qualify as a termination in Plaintiffs' favor for a malicious prosecution claim.

The "Illinois Appellate Court has made it clear that an 'unfounded' determination 'is not a final determination that the accusations ... were false,' and, in itself, does not establish a 'reasonable probability of falsity.'" *Cookson v. Schwartz*, 556 F.3d 647, 655 (7th Cir. 2009); *Taylor-Doyle v. Poehls*, No. 07-1048, 2010 WL 476694, at *7 (C.D. Ill. Feb. 3, 2010); *see also Sundbye v. Ogunleye*, 3 F.Supp.2d 254, 260 (E.D.N.Y. 1998) (dismissing claim for malicious prosecution where plaintiff alleged unfounded child abuse proceedings were initiated against her). In *Taylor-Doyle,* this Court previously stated that a DCFS hearing resulting in an order voluntary unfounding plaintiff for child abuse did not qualify as a termination in favor of plaintiff. The Court will continue to follow its own precedent. Therefore, the Court finds that while the adjudicatory hearing ended in Plaintiffs' favor, the administrative hearing did not.

Accordingly, the Court declines to dismiss the portion of Count X that pertains to the adjudicatory hearing, but dismisses the portion related to the administrative hearing.

### B. *Intentional Infliction of Emotional Distress*

Wolf argues that Plaintiffs' allegations do not show that she acted, or brought the indications, with the malice needed to support Plaintiffs' malicious prosecution claim. Plaintiffs state that they plausibly alleged that Wolf had no evidence that Tricia abused her children, yet Wolf separated Plaintiffs from their children and indicated them in order to protect the daycare and punish Tricia for reporting the daycare for alleged child abuse.

A claim for intentional infliction of emotional distress requires the following: (1) extreme and outrageous conduct by the defendant; (2) that the actor intended or knew there was a high probability that the conduct would inflict severe emotional distress; and (3) that the conduct did in fact cause severe emotional distress. *Lopacich v. Falk*, 5 F.3d 210, 212 (7th Cir.1993) (internal citation omitted). The Illinois Supreme Court has held that the conduct must be egregious and that:

> it [is] not enough that the defendant has acted with an intent which is tortious or
> even criminal, or that he has intended to inflict emotional distress or even that this
> conduct has been characterized by 'malice' or a degree of aggravation which
> would entitle the plaintiff to punitive damages for another tort. Liability has been
> found [only when the conduct] is so outrageous in character, and so extreme in
> degree, as to go beyond all bounds of decency

*Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976). The emotional distress suffered by a

plaintiff must be severe. *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976). Although fright,

horror, grief, shame, humiliation, worry etc. may fall within the ambit of the term emotional

distress, these mental conditions alone are not actionable. *Id*. Rather, the distress must be so severe

that no reasonable man could be expected to endure it. *Id.* The intensity and the duration of the

distress are factors to be considered in determining its severity. *Id.* (citations omitted). Illinois has

a very high threshold for determining what is extreme and outrageous and a very low threshold for

determining the bounds of decency where personal liberty is involved. *Herrera v. Chisox Corp*.,

No. 93 C 4279, 1995 WL 599065, at *11 (N.D. Ill. Oct. 6, 1995).

The Court finds that Plaintiffs have not alleged an intentional infliction of emotional

distress claim against Wolf. Plaintiffs have not provided allegations regarding which of Wolf's

actions were so extreme and outrageous that it caused them severe emotional distress. The

Complaint simply states that Wolf's conduct caused Plaintiffs mental, physical, or emotional harm.

ECF No. 1 at 37. The Court is unable to decipher which conduct Plaintiffs are referring to as there

are several allegations related to Wolf. Additionally, there are no allegations that state what mental

condition Plaintiffs experienced that was so severe or the intensity and duration of the distress. *See*

*Pub. Fin. Corp.,* 360 N.E.2d at 767. The Complaint is devoid of any allegation that relates to what

Plaintiffs experienced; rather, Plaintiffs simply reiterate the elements of an intentional infliction of

emotional distress claim without providing any information of how the elements relate to their

experience. Federal Rule of Civil Procedure 8 requires that a defendant be given fair notice of the

11

claim against her and the grounds upon which it rests. *Ashcroft*, 556 U.S. at 698. While it is true that a plaintiff need not allege all the facts necessary to succeed on his or her claims, they must provide allegations sufficient to put a defendant on notice of the specific claims against them. *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). Here, Plaintiffs allegations are too generalized to give Wolf enough notice as to what exactly they are claiming against her. *See Derby v. Perschke*, No. 88C3835, 1990 WL 179868, at *6 (N.D. Ill. Nov. 8, 1990) (finding a generalized pleading insufficient to determine what defendant was allegedly liable for).

Accordingly, the Court dismisses Count XI without prejudice. Plaintiffs may replead this count, in good faith, within 21 days of this Order.

### C.    *Sovereign Immunity*

Wolf argues that Plaintiffs' state law claims are barred by sovereign immunity as their actions stem from her employment as a State employee. Plaintiffs claim that sovereign immunity does not save Wolf because Plaintiffs' state law claims are based on Wolf's unconstitutional actions; accordingly, the claims are against her and not the State.

The Illinois State Lawsuit Immunity Act provides that, absent certain exceptions, "the State of Illinois shall not be made a defendant or party in any court." 745 Ill. Comp. Stat. 5/1. The prohibition "against making the State of Illinois a party to a suit cannot be evaded by making an action nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested." *Healy v. Vaupel*, 549 N.E.2d 1240, 1246 (Ill. 1990) (internal quotations and citation omitted). The doctrine of sovereign immunity "affords no protection, however, when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority, and in those instances

an action may be brought in circuit court." *Id.* This exception is premised on the principle that while legal official acts of state officers are regarded as acts of the State itself, illegal acts performed by the officers are not. *Leetaru v. Bd. of Trustees of Univ. of Illinois*, 32 N.E.3d 583, 596 (Ill. 2015). Accordingly, when a state officer performs illegally or purports to act under an unconstitutional act or under authority which he or she does not have, the officer's conduct is not regarded as the conduct of the State. P*HL, Inc. v. Pullman Bank & Tr. Co*., 836 N.E.2d 351, 357 (Ill. 2005) A suit may therefore be maintained against the officer without running afoul of sovereign immunity principles. *Sass v. Kramer,* 381 N.E.2d 975, 977 (Ill. 1978).

Here, Plaintiffs allege that Wolf acted in violation of constitutional law, specifically, Plaintiffs' substantive and procedural due process claims. Because Wolf is alleged to have "acted in violation of statutory or constitutional law," Plaintiffs' state law claims are not "against the State," and therefore the Act does not apply. *Murphy v. Smith*, 844 F.3d 653, 659 (7th Cir. 2016) (internal quotation marks omitted); *see Bentz v. Ghosh*, 718 F. App'x 413, 419-20 (7th Cir. 2017) (". . . the Illinois doctrine of sovereign immunity . . . will not apply to state-law claims against state officials who allegedly violate statutory or constitutional law"); *see also Wheeler v. Piazza*, 364 F. Supp. 3d 870, 886 (N.D. Ill. 2019) ("Here, Plaintiff has adequately alleged that Defendants conspired to, and then violated his constitutional rights . . . Plaintiff has therefore alleged that Defendants acted outside their official authority and thus sovereign immunity [is inapplicable]."); *see also Ellis v. Pfister*, 2017 WL 1436967, at *5 (N.D. Ill. Apr. 24, 2017) (denying Illinois state sovereign immunity on state law claims because the plaintiff plausibly alleged that the defendants committed constitutional violations).

Accordingly, the Court declines to find that sovereign immunity applies to Wolf regarding Count X, which is the remaining state law claim of malicious prosecution as it relates to adjudicatory hearing.

**CONCLUSION**

For the reasons stated above, Defendant Wolf's [52] Motion to Dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff may replead Count XI, in good faith, within twenty-one (21) days of this Order.

ENTERED this 8th day of January, 2021.


_____/s/ Michael M. Mihm_____
Michael M. Mihm
United States District Judge


.